UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X     Case No. 09-44979 (ESS)

In Re:                                                                              **JOINT PRETRIAL MEMORANDUM**
LESSNO, LLC,

                                Alleged Debtor.      Involuntary Chapter 7 Proceeding

-----------------------------------------------------------X

      The Alleged Debtor, Lessno, LLC, and the Petitioning Creditors* respectfully submit this Joint Pre-Trial Memorandum and state as follows:

**A.    WITNESSES**

      The parties expect to present the following witnesses, and may call the following additional witnesses listed below if the need arises:

    **1.    PETITIONING CREDITORS**

| NAME | ADDRESS | PHONE | |
|---|---|---|---|
| Mario Sotirov | 44-02 23 St. Suite 514, Long Island City, NY 11101 | 1-718-433-3875 | Expects to call |
| Ani Petrova-Sotirova | 44-02 23 St. Suite 514, Long Island City, NY 11101 | 1-718-433-3875 | Expects to call |
| Assen Vassilev | 44-02 23 St. Suite 514, Long Island City, NY 11101 | 1-718-433-3875 | Expects to call |
| Stanley Gyoshev | 44-02 23 St. Suite 514, Long Island City, NY 11101 | 1-718-433-3875 | Expects to call |
| Konstantin Petrov | c/o opposing counsel | | Expects to call |
| Petar Nedyalkov | c/o opposing counsel | | May call if need arises |
| Stefan Minchev | c/o opposing counsel | | Expects to call |
| Antoaneta Orbetsova | | | May call if need arises |

1

**2.     LESSNO, LLC**

| NAME | ADDRESS | PHONE | |
|---|---|---|---|
| Stefan Minchev | NEVEQ<br>53B Nikola Vaptsarov Blvd.<br>Mandarin Office Center, 4th Floor, Office 12,<br>Sofia 1407<br>Bulgaria | 359.2.958.7665 | Expects to call |
| Konstantin Petrov | NEVEQ<br>53B Nikola Vaptsarov Blvd.<br>Mandarin Office Center, 4th Floor, Office 12,<br>Sofia 1407<br>Bulgaria | 359.2.958.7665 | Expects to call |
| Petar Nedyalkov | NEVEQ<br>53B Nikola Vaptsarov Blvd.<br>Mandarin Office Center, 4th Floor, Office 12,<br>Sofia 1407<br>Bulgaria | 359.2.958.7665 | May call if need arises |
| Antoaneta Orbetsova | | | May call if need arises |
| Mario Sotirov | c/o opposing counsel | | May call if need arises |
| Ani Petrova-Sotirova | c/o opposing counsel | | May call if need arises |
| Assen Vassilev | c/o opposing counsel | | May call if need arises |
| Stanley Gyoshev | c/o opposing counsel | | May call if need arises |

The parties reserve the right to amend this list as may be necessitated by the evidence presented.

B.    **DEPOSITIONS**

The witnesses, whose testimony is expected to be presented by means of deposition, and a transcript of the pertinent portions of the deposition testimony, are set forth below:

| WITNESS | PORTIONS OF TESTIMONY | TRANSCRIPT ATTACHED |
|---|---|---|
| Konstantin Petrov | Page 45 and 46 (Lessno doesn't have the money to repay certain loans) | "A" |
| Sdfanov Nedyalkov | Pages 15 to 16 and 18 (last time Lessno conducted business), Pages 36 to 47 (testimony contrary to his March 15, 2010 affidavit); | "B" |

The parties reserve the right to present additional portions of testimony to the extent necessitated

by the other's proofs.

C.    **EXPERT WITNESSES**

A list of witnesses intended to be called as experts, together with any statements as to an objection to their qualification is set forth below:

None.

D.    **DOCUMENTS**

A pre-numeration identification of each document or other exhibit, other than those to be used for impeachment, in the sequence in which they will be offered, including summaries of other evidence, separately identifying those exhibits which the party expects to offer and those which the party may offer if the need arises is set forth below.

1.    **PETITIONING CREDITORS**

(1) Promissory Note – Exhibit "1";
(2) Promissory Note – Exhibit "2";
(3) The bank statements of the Alleged Debtor during relevant periods;
(4) The financial statements of the Alleged Debtor during relevant periods;
(5) Ticketing Agreement between the Alleged Debtor and Petitioner Trans Am Travel;
(6) Ticketing Agreement between the Alleged Debtor and Petitioner Smart Travel Network, Inc;
(7) Credit card bills from Capital One addressed to Petitioner Gyoshev during relevant periods;
(8) Email from Antoaneta Orbetsova acknowledging receipt of funds;
(9) Term Sheet of May 31, 2007 between Neveq Sarl and Lessno LLC, Lessno Bulgaria EOOD, and EZsearch LLC;
(10) Shareholder Agreement of March 27, 2008;
(11) Agreement of April 1, 2008; together with Appendices 1 and 2
(12) Agreement of April 2, 2008;
(13) Email from Pavel Ezekiev to Smart Travel;
(14) Lessno LLC financial report 2007;
(15) Lessno LLC BP 2008-2009;
(16) Transcripts of Depositions of Konstantin Petrov, Stefan Minchev and Petar Nedyalkov;
(17) Linkedin profile page of Antoaneta Orbetsova;
(18) Other discovery materials provided by Alleged Debtor to Petitioning Creditors;
(19) Business Plan 2007-2008 dated March 14, 2007 - Approved
(20) Lessno LLC & EZSearch LLC 2008_Financial Report – prepared November 8, 2008 by Antoaneta Orbetsova

**2.    LESSNO, LLC**

(1) The Exhibits Set forth above;
(2) Shareholders Agreement and Deed;
(3) Ticketing Agreement between the Alleged Debtor and Petitioner Trans Am Travel;
(4) Worldspan Connectivity Software Addendum
(5) Worldspan Inducement Agreement
(6) Worldspan Subscriber Agreement
(7) Charts summarizing incentive credits regarding Smart Travel Contract.
(8) Ticketing Agreement with Trans Am Travel
(9) E-Mail from Mario Sotirov soliciting petitioners and forensic report.
(10) Correspondence to Sotirov re:  return firm belongings
(11) Correspondence to Vassilev "re:  Breach of Obligations"
(12) Correspondence to Vassilev re:  return firm belongings
(13) Charts summarizing account deposits withheld
(14) Chart – Gyoshev personal trips

      (15) Affidavit from TransAm Travel

      (16) Such additional documentation as may be necessary based upon Petitioners' proofs.

### E.   OBJECTIONS TO DESIGNATED DOCUMENTS DEPOSITION TESTIMONY

A statement of the objections, and grounds therefore, reserved as to the admissibility of a deposition designated by another party and/or to the admissibility of documents or exhibits are set forth below.

    **1.**     **Petitioning Creditor's Objections**

**None.**

    **2.**     **Alleged Debtor's Objections**

**None.**

### F.   STATEMENT AS TO EXCHANGE OF EXHIBITS

The parties confirm that they have exchanged copies of the proposed exhibits.

### G.   FACTS WHICH ARE ADMITTED AND REQUIRE NO PROOF

The parties agree that the following facts are admitted and require no proof.

(a)   Petitioner Mario Sotirov ("Sotirov") served as the Chief Executive Officer of the Alleged Debtor for the period October 2008 to June 11, 2009;

(b)   Petitioner Assen Vassilev ("Vassilev") served as the Chief Executive Officer of the Alleged Debtor for the period December 2004 to October 2008;

(c)   At all relevant times, Petitioner Sotirov was married to Ani Petrova-Sotirova, the president of Petitioner Smart Travel Network, Inc.

(d)   Petitioner Trans Am Travel entered into a "Ticketing Agreement" with Alleged Debtor dated November 11, 2006 and the copy identified as **Exhibit " 1**" is a true and accurate copy of same;

(e)   Petitioner Trans Am Travel provided ticketing services and GDS access to the Alleged Debtor pursuant to the Ticketing Agreement;

(f) Petitioner TransAm Travel, Inc. has submitted an affidavit stating that it has been paid in full for the amounts claimed in the petition on or about January 2010;

(g) Petitioner Smart Travel Network, Inc. entered into a "Ticketing Agreement" with Alleged Debtor dated November 11, 2006 and the copy identified as **Exhibit "2"** is a true and accurate copy of same;

(h) Petitioner Smart Travel Network, Inc. provided ticketing services and GDS access to the Alleged Debtor pursuant to the Ticketing Agreement;

(i) Petitioners Sotirov and Vassilev are the alleged creditors of the Alleged Debtor in the sum of $89,333.00 pursuant to the terms of a Promissory Note dated May 13, 2009, and the copy identified as **Exhibit "3"** is a true and accurate copy of same;

(j) Petitioner Smart Travel Network, Inc, is the alleged creditor of the Alleged Debtor in the sum of $40,000.00 pursuant to the terms of a promissory note dated May 12, 2009, and the copy identified as **Exhibit "4"** is a true and accurate copy of same;

(k) Petitioner Smart Travel Network, Inc. has submitted nineteen (19) creditor trade invoices to Alleged Debtor for the sum of $118,923.02, and the copies identified as **Exhibit "5"** are a true and accurate copy of same;

(l) Alleged Debtor acknowledged receipt of the sums in an email dated June 10, 2009 (**Exhibit "6"** being a true and accurate copy of same), and the funds were spent by the Alleged Debtor for the purposes specified in the above-referenced promissory notes;

(m) Petitioner Stanislav Gyoshev ("Gyoshev") served as Chairman of the Advisory Board.of TTS. which functioned as the Board of the Alleged Debtor from March 2008 to June 11, 2009. Between the time of Neveq's investment in April of 2007 and TTS' incorporation in March of 2008, there was an interim Board constituted according to the rules of the Term Sheet which was in charge of the operative matters of Lessno, LLC.

(n) Petitioner Mario Sotirov ("Sotirov") served as a member of the Board from March 2008 to June 11, 2009.

(o) Petitioner Assen Vassilev ("Vassilev") served as a member of the Board from March 2008 to June 11, 2009.

(p) Petitioner Gyoshev provided a personal guaranty for the corporate credit card issued in name of Alleged Debtor;

(q) Lessno, LLC had at all pertinent times, at least 12 creditors that held

claims that were not contingent as to liability or subject to a bona fide dispute as to validity or amount.

**H.      ISSUES OF FACT THAT REMAIN TO BE LITIGATED**

The parties submit that the following issues of fact remain to be litigated.

(a)   Whether Petitioner Smart Travel Network, Inc. received incentives or discounts pursuant to the Ticketing Agreement, and whether such constitutes a bona fide dispute to the debt;

(b)   Whether the Board of Directors approved or consented to the loans provided by Petitioners Sotirov and/or Vassilev, and whether such constitutes a bona fide dispute to the debt;

(c)   Whether the expenditures claimed by Petitioner Gyoshev are legitimate, reimbursable expenditures, and whether such constitutes a bona fide dispute to the debt.

(d)   Whether Sotirov breached his fiduciary duties to the Alleged Debtor in entering into the Ticketing Agreement.

(e)   Whether Sotirov breached his fiduciary duties to the Alleged Debtor in entering into the promissory notes.

(f)   Whether Sotirov's indebtedness is in genuine dispute. .

(g)   Whether Vassilev's indebtedness is in genuine dispute.

(h)   Whether or not Gyoshev's indebtedness is in genuine dispute.

(i)   Whether Smart Travel's indebtedness is in genuine dispute.

(j)   Whether or not Smart Travel Network Inc., a New York corporation, is Sotirov's alter ego.

(k)   Whether or not the terms of the Ticketing Agreement are commercially reasonable.

(l)   Whether or not Sotirov or Vassilev obtained approval from the Board before entering into the Ticketing Agreement with Smart Travel, and if so, whether such constitutes a bona-fide dispute to the debt.

(m)   Whether Sotirov or Vassilev failed to seek, and did not obtain, approval from the Alleged Debtor's Board before entering into the transactions

giving rise to the $40,000 Promissory Note.

(n)   Whether Sotirov or Vassilev was required to seek Board Approval before entering into loan transactions on behalf of the Alleged Debtor in excess of $100,000.

(o)   Whether Sotirov and Vassilev were precluded from entering into contractual relationships with the Alleged Debtor.

(p)   Whether Alleged Debtor generated over $103,000 in incentive compensation from Worldspan and if so, whether it was paid to or otherwise benefited Smart Travel Network Inc., and if so, whether this constitutes a bona-fide dispute to debt of Alleged Debtor to Petitioner Smart Travel Network Inc.

(q)   Whether or not Sotirov, Vassilev and/or Gyoshev maintained personal bank accounts holding funds belonging to the Alleged Debtor, and if so for which period(s), and if so, whether this constitutes a bona fide dispute to the debt.

(r)   Whether or not Gyoshev received $37,000 from Lessno's subsidiary without authorization, and if so, whether such constitutes a bona fide dispute to the debt.

(s)   Whether or not Smart Travel Network provided GDS access and ARC accredited ticket-issuing services and credit to Alleged Debtor and generated invoices related thereto in the ordinary course of business and Alleged Debtor has failed to pay for such invoices although it accepted and benefitted from the tickets and services provided in regards thereto.

(t)   Whether the claims of wrongdoing asserted by Lessno against Sotirov are sufficient to place the validity of the indebtedness claimed by Sotirov into dispute.

(u)   Whether Lessno is generally paying its debts as they become due other than the debts that are the subject of a bona fide dispute as to liability or amount.

(v)   Whether or not Alleged Debtor currently maintains a separate and distinct corporate identity, existence and staff apart from its corporate parent and entities owned and controlled by its corporate parent.

(w)   Petitioning creditors did not receive any portion of the money that was received and disbursed by the Alleged Debtor pursuant to the above-referenced promissory notes;

(x)   On March 31, 2008, all ownership interest in Lessno LLC and EZsearch/ Vayant LLC was transferred to Travel Technologies Solutions

Cooperatief ("TTS"), a newly formed Netherlands cooperative;

(y) Since their formation in December 2004 until October 2008, Lessno LLC and EZsearch LLC were run as a single company. All employees were employed by the subsidiary Lessno Bulgaria EOOD and there was a shared office in Sofia, Bulgaria leased in the name of Lessno Bulgaria.

(z) The resolution of the Advisory Board of TTS of 6 October 2008 marked the beginning of the operational and financial separation of the two companies. Still, all employees continued to be employed by Lessno Bulgaria until October 31, 2009, and the shared office space was leased by Lessno. From November 1, 2009, the situation was reversed: the employees were given Vayant contracts and a new office in Sofia, Bulgaria was leased in the name of Vayant.

(aa) During the period from March 31, 2008 through June 11, 2009, Alleged Debtor did not maintain its own board of directors, and management of Alleged Debtor instead reported directly to the 5-member Advisory Board (the "Board"), which had the authority and functions of a board of directors, of TTS, which was the sole owner of all equity share capital in Alleged Debtor and which exercised direct board governance authority over Alleged Debtor's management team during this entire period.

(bb) Pursuant to the terms of Petitioner Gyoshev's engagement, the Alleged Debtor is obligated to reimburse Petitioner Gyoshev for any bona fide business expenditures approved and authorized under company policy or by the Board.

(cc) The Alleged Debtor paid Gyoshev over $10,000 for various business related expenses.

(dd) The Alleged Debtor has covered over $10,000 for various personal related expenses of Gyoshev and his family, which he has agreed to reimburse to the company but now claims as a liability of the Alleged Debtor.

(ee) Over $29,000 in cash belonging to the Debtor was blocked by Petitioners who controlled the Alleged Debtor's accounts including $24,297 in Cybersource, $2,432.14 in Capital One and $771.67 in Bank of America.

(ff) At all times from October 1, 2008 through June 11, 2009, Antoaneta Orbetsova served as de facto CFO of Alleged Debtor.

(gg) At all times from June 11, 2009 through July 2010, Antoaneta Orbetsova was employed in the capacity of CFO or other financial officer of Lessno LLC, as reflected by payroll records of Alleged Debtor.

(hh) From June 12 2009 through at least January 2011, Antoaneta Orbetsova retained unrestricted financial officer access to Alleged Debtor and subsidiary bank accounts at ING Bank and First Investment bank

(ii) At all times from October 1, 2008 through June 11, 2009, all outgoing payment orders and wire orders, and all staff payroll payments of Alleged Debtor were approved and submitted by CFO Antoaneta Orbetsova.

**I.      ISSUES OF LAW TO BE DETERMINED**

The parties submit that the following issues of law need to be determined.

(a) Whether "the (alleged) debtor is generally not paying such debtor's debts as such debts become due" 11 U.S.C. § 303(h)(1), and if so;
(b) If there is a dispute as to the existence of the liability or amount of the Petitioners' claims.
(c) Whether the Alleged Debtor is insolvent.

**J.      BRIEF STATEMENT SUMMARIZING THE PETITIONING CREDITORS'      CASE**

In the months preceding certain loans made by the Petitioners, the Alleged Debtor (Lessno LLC and its sister company EZsearch LLC (later renamed Vayant)) had rapidly depleted its cash resources. The members of parent company TTS, namely the founders of Alleged Debtor and its sole investor – venture capital fund Neveq S.a.r.l. - held negotiations on the terms of an additional investment by Neveq in the companies. On or about May 9, 2009, the Advisory Board of TTS authorized members Mario Sotirov, Assen Vassilev and Stanislav Gyoshev to arrange short-term unsecured loans to meet overdue payroll payments and pay critical suppliers. A month later, with the negotiating parties still unable to reach an agreement on the terms of the proposed financing, Neveq called a General Meeting of TTS and voted to remove all other members from the cooperative without compensation. At the same meeting, Neveq also removed Petitioners Mario Sotirov and Assen Vassilev as CEOs of Lessno LLC and EZsearch LLC, respectively.

Lessno's specific challenges to the indebtedness are as follows:

**1.    As to Petitioner Smart Travel Network's Invoice Claims.**

Alleged Debtor's contract debt of $118,923.02 to Petitioner Smart Travel Network Inc. is a valid contractual debt incurred for goods and services duly provided to, and actually utilized and consumed by, Lessno LLC, pursuant to valid and binding contractual agreements.

**2.    As to Petitioner Smart Travel Network's $40,000 Promissory Note**

This loan was duly approved by the Board and was personally received and accepted into the accounts of Lessno LLC by Alleged Debtor's CFO Anoaneta Orbetsova, and such proceeds were utilized for valid company payroll and ordinary course company operating expenditures. The full amount of the loan was utilized by Lessno LLC in a series of vendor, payroll and other payments which were personally approved by and executed by Alleged Debtor's CFO Anoaneta Orbetsova.  CFO Orbetsova was hand-picked and appointed by the ultimate owner of Alleged Debtor, Neveq S.a.r.l. and CFO Orbetsova remained on the payroll as Alleged Debtor's CFO from September 2008 through at least July 2010, over one year after TTS and Neveq S.a.r.l. acquired full ownership of Lessno LLC on June 11, 2011.

**3.    As to the $89,333 Promissory Note by Mario Sotirov and Assen Vassilev**

This loan was duly approved by the Board and was personally received and accepted into the accounts of Lessno LLC by Alleged Debtor's CFO Anoaneta Orbetsova, and such proceeds were utilized for valid company payroll and ordinary course company operating expenditures. The full amount of the loan was utilized by Lessno LLC in a series of vendor, payroll and other payments which were personally approved by and executed by Alleged Debtor's CFO Anoaneta Orbetsova.  CFO Orbetsova was hand-picked and appointed by the ultimate owner of Alleged Debtor, Neveq S.a.r.l. and CFO Orbetsova remained on the payroll as Alleged Debtor's CFO

from September 2008 through at least July 2010, over one year after TTS and Neveq S.a.r.l. acquired full ownership of Lessno LLC on June 11, 2011.

**4.     As to the claim of Stanislav Gyoshev**

Alleged Debtor agreed and was obligated to provide full reimbursement of any charges incurred by Alleged Debtor as a result of Stanislav Gyoshev's provision of personal guarantee relating to the corporate credit card issued to Alleged Debtor. The amount claimed by Gyoshev relate to bona-fide and legitimate business expenses and were incurred by Alleged Debtor under the procedures and policies in place at the time.

Petitioning Creditors' Involuntary Petition was properly filed pursuant 11 U.S.C. § 303(b)(1).

**K.     BRIEF STATEMENT SUMMARIZING LESSNO, LLC'S CASE**

Lessno, LLC submits that the Involuntary Petition is not filed by "three or more entities, each of which is either the holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute as to liability or amount". Accordingly, the involuntary petition has not been properly filed. See 11 U.S.C. § 303(b)(1).

Lessno's specific challenges to the indebtedness are as follows:

**1.     As to Petitioner Smart Travel Network's Invoice Claims.**

Smart Travel Network contends that Lessno owes it funds on account of unpaid ticketing fees. Lessno disputes that this is a valid contractual debt.

First, the contract was not timely disclosed to Lessno's Board of Directors and did not receive applicable approvals. The contract was entered into at the behest of Mario Sotitov, whose wife -- Ani Petrova-Sotirova --- was the principal of Smart Travel. Moreover, the contract was not fair and reasonable as to Lessno. Instead, the contract was structured in such a

fashion as to charge Lessno for all the expenses for services (GDS hits) provided by Worldspan but allowed Smart Travel to be paid from incentives that would otherwise be payable to Lessno for the bookings generated by Lessno in Worldspan.   In all, the Lessno portion of incentives totals over $100,000.

**2.       As to Petitioner Smart Travel Network's $40,000  Promissory Note**

This loan, bundled with $89,333 note exceeds amount of borrowing authorized without Board approval.   Further, the loan was entered into by Mario Sotirov who was pursing the agreement for both lender and borrower.   The existence of the loan not disclosed to the Board until after the default occurred.  The purpose of the loan was to manufacture a bankruptcy claim, to preclude exclusion from Lessno and to solicit support from Lessno staff.  The loan was also contrary to intentions of original investors to make capital contributions, not loans.

**3.       As to the $89,333 Promissory Note by Mario Sotirov and Assen Vassilev**

The loan, bundled with $40,000 note, exceeds amount of borrowing authorized without Board approval.   No Board approval was received.and the loan was not revealed to the Board until after default occurred.  The Purpose was to manufacture bankruptcy claim, to preclude exclusion from Lessno and to solicit support from Lessno staff.  Contrary to intentions of original investors to make capital contributions, not loans.

Lessno LLC also has wrongful conduct claims as set-off.   These claims include: (i) breaches of fiduciary duty: (ii) improper loans; (iii) unfair contract terms; (iv) soliciting bankruptcy filing; (v)  solicitation of employees; (vi)gross mismanagement; (vii) failure to release Lessno funds in blocked accounts.

**4.       As to the claim of Stanislav Gyoshev**

The Alleged Debtor has covered $10,172.89 for various personal related expenses of

Gyoshev and his family. He has agreed to reimburse those expenses to the company. Gyoshev now claims that the Alleged Debtor has to cover the negative balance of $12,500 on the corporate credit card to which he was a guarantee. The negative balance is to great extent due to the fact that Gyoshev has not reimbursed the Alleged Debtor for his personal expenses. Moreover, Mr. Gyoshev received approximately $37,000 from Lessno Bulgaria without authorization.   In addition, Vassilev and Sotirov owe the Alleged Debtor and its subsidiaries $2,333 in private expenses charged to the company and not returned company laptop computer.

L.      **ESTIMATED LENGTH OF TRIAL**

Twelve (12) hours.

Dated:  July 25, 2011

| | |
|---|---|
| *JOSEPH SANCHEZ/* | */MICHAEL  CONNOLLY/* . |
| JOSEPH SANCHEZ, ESQ. | MICHAEL CONNOLLY, ESQ. |
| LAW OFFICE OF JOSEPH SANCHEZ, P.C. | FORMAN HOLT ELIADES & RAVIN, LLC |
| *Attorney for Petitioners\** | *Attorneys for Alleged Debtor* |
| 295 Northern Boulevard, Suite 301 | 80 Route 4 East, Suite 290 |
| Great Neck, New York 11021 | Paramus, New Jersey 07652 |
| Telephone: (516) 417-8525 | Telephone: (201) 845-1000 |
| Telecopier: (516) 977-3020 | Telecopier: (201) 845-9112 |

**\*  Petitioner TransAm Travel, Inc. is represented in this matter by Edward Neiger, Esq.**